UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| JAMES H. WARK, | DOCKET NO. 4:21-cv-00075 |
| vs. | JURY TRIAL DEMANDED |
| CHEVRON CORPORATION and NOBLE ENERGY, INC. | |

**COLLECTIVE ACTION COMPLAINT**

1. Plaintiff James Wark brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA) against Defendant Noble Energy, Inc. (Noble) and its *bona fide* successor, Defendant Chevron Corporation (Chevron and collectively Defendants).

2. Upon information and belief, Chevron acquired Noble's operations through acquisition in 2020.[1]

3. Wark regularly worked for Noble in excess of 40 hours each week.

4. But Wark never received overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, Noble paid Wark a daily rate with no overtime pay and improperly classified him as an independent contractor. This action seeks to recover the unpaid overtime wages and other damages owed to Wark.

---

[1] https://www.chevron.com/stories/chevron-acquires-noble-energy.

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the events giving rise to the claims occurred in this district and division. Specifically, Wark worked for Defendants in and around Pecos County.

### THE PARTIES

8. Wark worked exclusively for Noble as a Drilling Consultant and Wellsite Supervisor from approximately October 2017 until February 2019. Throughout his employment with Noble, he was paid a day-rate with no overtime compensation and was classified as an independent contractor. His consent to be a party plaintiff is attached as Exhibit A.

9. Noble Energy Inc. is a foreign corporation and may be served with process through its registered agent, Corporation Service Company, 211 E. 7th St. Ste. 620, Austin, Texas 78701.

10. Defendant Chevron Corporation is a California corporation that may be served with process by serving its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

11. Chevron is Noble's *bona fide* successor.

12. Chevron had notice of Noble's potential liability to Wark under the FLSA.

13. Chevron may thus be held liable for Noble's potential liability to Wark for Noble's violations of the FLSA as its *bona fide* successor.

### COVERAGE UNDER THE FLSA

14. For at least the past three years, Defendants have been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15.     For at least the past three years, Defendants have been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16.     For at least the past three years, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

17.     For at least the past three years, Wark and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

18.     Defendants treated Wark as an employee and uniformly dictated the pay practices to which Wark and its other employees (including its so-called "independent contractors") were subjected.

19.     Defendants' misclassification of Wark as an independent contractor does not alter their status as employers for purposes of this FLSA collective action.

## FACTS

20.     Chevron is a global energy company.

21.     Chevron acquired Noble in 2020.[2]

22.     To complete their business objectives, Noble and Chevron hire Drilling Consultant and Wellsite Supervisor personnel to perform the necessary work.

---

[2] *See footnote 1, supra.*

23. During the relevant time period Defendants hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to the Drilling Consultants and Wellsite Supervisors that performed work for them.

24. Wark worked exclusively for Noble from approximately October 2017 until February 2019 as a Drilling Consultant or Wellsite Supervisor. Throughout his employment with Noble, he was classified as an independent contractor and paid on a day-rate basis.

25. As a Drilling Consultant, Wark's primary job duties (and the job duties of all other Drilling Consultants and Wellsite Supervisors employed by Noble who were classified as independent contractors and paid a day-rate) included ensuring that the craft work was competed according to Noble's specifications, running cement lines, and overall making sure that the drilling process is proceeding within Noble's well plan, as needed.

26. Wark worked well in excess of 40 hours each week while employed by Noble.

27. The work Wark performed was an essential party of Noble's, and now Chevron's, core business.

28. During Wark's employment with Noble while he was classified as an independent contractor, Noble exercised control over all aspects of his job.

29. Noble did not require any substantial investment by Wark for him to perform the work required of him.

30. Wark was not required to possess any unique or specialized skillset (other than that maintained by all other Drilling Consultants and Wellsite Supervisors) to perform his job duties.

31. Noble determined Wark's opportunity for profit and loss.

32. Noble controlled all the significant or meaningful aspects of the job duties performed by Wark.

33. Noble ordered the hours and locations Wark worked, tools used, and rates of pay received.

34. Noble controlled all aspects of Wark's job activities by enforcing mandatory compliance with Noble's policies and procedures.

35. No real investment was required of Wark to perform his job. Wark utilized equipment provided by Noble to perform his job duties.

36. Wark did not provide the equipment he worked with on a daily basis.

37. Noble made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Wark worked.

38. Wark did not incur operating expenses like rent, payroll and marketing.

39. Wark was economically dependent on Noble during his employment.

40. Noble set Wark's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Noble.

41. Noble directly determined Wark's opportunity for profit and loss. Wark's earning opportunity was based on the number of days Noble scheduled him to work.

42. Very little skill, training, or initiative was required of Wark to perform his job duties.

43. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Noble.

44. Virtually every job function was pre-determined by Noble, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

45. Wark was prohibited from varying his job duties outside of the pre-determined parameters.

46. Moreover, the job functions of the Drilling Consultants were primarily technical in nature, requiring little to no official training, much less a college education or other advanced degree.

47. Wark was not employed by Noble on a project-by-project basis.

48. In fact, while Wark was classified as an independent contractor, he was regularly on call for Noble and was expected to drop everything and work whenever needed.

49. Wark worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for weeks at a time.

50. Instead of paying him overtime, Noble paid Wark a day-rate.

51. Noble's policy of failing to pay its independent contractors, including Wark, overtime violates the FLSA because Noble's day-rate policy does not satisfy the requirements of a salary under the FLSA and these workers are, for all purposes, employees performing non-exempt job duties.

52. Because Wark (and Noble's other independent contractors) was misclassified as an independent contractor by Noble, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

53. Noble's day-rate system violates the FLSA because Wark and the other Drilling Consultants and Wellsite Supervisors did not receive any pay for hours worked over 40 hours each week.

54. Upon information and belief, Chevron acquired Noble's operations sometime in 2020.

55. Chevron is a *bona fide* successor of Noble.

56. Chevron stepped into the shoes of Noble following Chevron's acquisition of Noble such that there is substantial continuity between the two entities' business operations.

57. Like Noble, Chevron is an oil and gas exploration and production company operating throughout the United States, including in Texas, which retains workers to perform the services requested by its clients using the same business model as Noble.

58. Upon information and belief, Chevron took over Noble's contracts with its clients.

59. Chevron knew, or should have known, of Noble's potential liability for damages sought herein prior to its acquisition of Noble.

60. The overall equities support the imposition of successor liability on Chevron.

61. Chevron acquired the assets of Noble and continued Noble's business with notice Noble was potentially liable for wage and hour violations owed to the members of the Putative Class.

62. Absent successor liability, the acquisition would potentially extinguish Noble's liability to Plaintiffs and members of the Putative Class, who would be powerless to stop it.

## FLSA Violations

63. As set forth herein, Defendants have violated, and are violating, section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

64. Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Wark overtime compensation. Defendants' failure to pay overtime compensation to Wark was neither reasonable, nor was the decision not to pay overtime made in good faith.

65. Accordingly, Wark is entitled to overtime wages under the FLSA in an amount equal to 1.5 times his rate of pay, plus liquidated damages, attorney's fees, and costs.

## Jury Demand

66. Wark demands a trial by jury.

## Relief Sought

67. WHEREFORE, Wark prays for judgment against Defendants as follows:

(a) For an order pursuant to section 16(b) of the FLSA finding Defendants liable for unpaid back wages, and an equal amount of liquidated damages, due to Wark;

(b) For an order awarding Wark the costs of this action;

(c) For an order awarding Wark his attorneys' fees;

(d) For an order awarding Wark unpaid benefits and compensation in connection with the FLSA violations;

(e) For an order awarding Wark pre- and post-judgment interest at the highest rates allowed by law; and

(f) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
State Bar No. 24014780
Andrew W. Dunlap
State Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**